KETLER v. COMMISSIONER OF
INTERNAL REVENUE.

No. 10518.

United States Court of Appeals
Seventh Circuit.

May 6, 1952.

John H. Bishop, Chicago, Ill., John N. Kern, William M. Doherty, Chicago, Ill., of counsel, for petitioner.

Ellis N. Slack, Acting Asst. Atty. Gen., Hilbert P. Zarky, Sp. Asst. to Atty. Gen., for respondent.

Before KERNER, DUFFY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

This is a petition to review a decision of the Tax Court which sustained the Commissioner of Internal Revenue in assessing a deficiency of income tax against petitioner for the year 1944. The nub of the controversy is the proper cost basis for 252 shares of F. K. Ketler Company common stock which was acquired by the petitioner as creditor and sole stockholder of Monroe Construction Company upon its liquidation and dissolution in 1941. It is petitioner's claim that he received said shares in one of a series of transactions amounting to a tax-free reorganization under Sec. 112, Internal Revenue Code, 26 U.S.C.A. § 112. The Tax Court, sustaining the Commissioner, held said shares were not received by petitioner pursuant to any plan of reorganization, and that the cost basis to petitioner was their fair market value when transferred to him in August, 1941.

F. K. Ketler Company, an Illinois corporation, was organized by petitioner in 1923 to engage in the construction business. It had an authorized capital of $15,000, consisting of 150 shares of $100 par value stock. Petitioner, directly or by nominees, subscribed for and petitioner paid for all of the authorized shares, fifty percent of which were issued to him at the time of organization and the balance on November 9, 1934.

In 1934 F. K. Ketler Company became financially involved, and on November 9, 1934, its name was changed to Monroe Construction Company (hereinafter called Monroe Company). On November 19, 1934, a new Illinois corporation was organized by petitioner to engage in the construction business under the name of F. K. Ketler Company (hereinafter called Ketler Company). It had an authorized capital of 2,000 shares of common stock and 2,500 shares of preferred stock, all without par value.

On November 20, 1934, Monroe Company leased its real estate, construction equipment and other property to Ketler Company for a period of 10 years, on terms of $35 per month rent and 50% of Ketler Company's net profits. Ketler Company also was given an option to purchase the property during the term, at a value to be determined by independent appraisers. In exchange for 252 shares of Ketler Company common stock, the contracts for certain construction work in progress and unexpired insurance contracts of the Monroe Company were assigned to Ketler Company; and Ketler Company also received $1,300 in cash and $24,221.34 in accounts receivable from the Monroe Company.

On January 8, 1935, Monroe Company, through its directors, instituted proceedings for reorganization under the provisions of Sec. 77–B of the Bankruptcy Act, 11 U.S. C.A. § 207, but reorganization was not consummated and the proceedings were later dismissed without prejudice.

Monroe Company continued to rent its property to Ketler Company under the terms of said lease until January 6, 1937, on which date Monroe Company transferred its properties to Ketler Company in exchange for 1,350 shares of the preferred stock of Ketler Company having a par value of $13,500.

From November 19, 1934, the date of organization, to August 11, 1941, petitioner made the following purchases of Ketler Company stock:

| Date | Amount and kind | | Price per share | Cost |
|---|---|---|---|---|
| 1- 6-37 | 1,000 | Common | $ 0.10 | $ 100.00 |
| 1-29-37 | 675 | Preferred | 10.00 | 6,750.00 |
| 2- 2-40 | 475 | Preferred | 10.00 | 4,750.00 |
| 2- 3-40 | 225 | Common | 10.00 | 2,250.00 |
| 8-11-41 | 223 | Common | 18.50 | 4,125.50 |
| Total: | 1,448 Common & 1,150 Preferred | | | $17,975.50 |

In August, 1941, petitioner donated to surplus of Ketler Company the 1,150 shares of preferred stock shown in the above table; thus the cost to petitioner of 1,448 shares of common stock of Ketler Company was $17,975.50.

Monroe Company was dissolved on August 8, 1941. In the winding up of the affairs of Monroe Company, Ketler Company, as a creditor of Monroe Company, agreed to cancel Monroe Company's indebtedness to it in the sum of $19,441.30, in consideration of the transfer to it of the 1,350 shares of Ketler Company preferred stock. Petitioner agreed to pay off the other creditors of Monroe Company, which obligation he fulfilled. The indebtedness of Monroe Company to petitioner, including the indebtedness to other creditors, which he assumed, was $56,241.72. At the dissolution of Monroe Company, petitioner, who was creditor and sole stockholder of Ketler Company, received from Monroe Company the 252 shares of common stock of Ketler Company transferred to Monroe Company on November 20, 1934. The book value of said shares at the time of the dissolution of Monroe Company was $5,044.41, or $20.0175 per share.

When Ketler Company was dissolved on January 3, 1944, petitioner was the sole owner of its 1,700 outstanding shares of common stock. There is no dispute that the proper cost basis of the 1,448 shares of common stock was $17,975.50. There is, however, vigorous dispute as to the proper basis of the remaining 252 shares, the Commissioner and the Tax Court holding that the correct basis was $5,044.41, said to be its fair market value on August 8, 1941, when petitioner received it from Monroe Company.

■ Petitioner contends that he received the 252 shares of stock through an exchange arising from and pursuant to a plan of reorganization, which exchange was tax-free under the Internal Revenue Code— Sec. 112 (g) (1) defining reorganizations,[1] and Sec. 112(b) (4).[2] In his brief petitioner states he relies upon Sec. 112(b) (4); however this section does not apply to a gain or loss by a stockholder of a corporation which was a party to a reorganization. Petitioner should have relied upon Sec. 112(b) (3), and throughout respondent's brief it is assumed that petitioner relied upon that section.

Petitioner claims the proper basis for the 252 shares of Ketler Company stock is the $15,000 he originally paid for the stock of the company which became Monroe Company, plus $56,241.72 which was the amount of Monroe Company's debt to petitioner and to others which he assumed and paid. On his tax return for 1944, petitioner claimed a capital loss of the difference between his investment in the capital stock of Ketler Company as of December 31, 1943, and the value of the assets he acquired as of the same date. According to his computation he suffered a loss of $20,761.55, but claimed only $1,000, the maximum allowable under Sec. 117(d), Internal Revenue Code, 26 U.S.C.A. § 117(d).

The Commissioner computed petitioner's cost or other basis for the 1,700 shares of the common stock of Ketler Company as follows:

Total amount paid for 1,448 shares of common stock...... $ 6,475.50
Cost of 1,150 shares of preferred stock donated by petitioner to Ketler Company ............ 11,500.00

Basis for 252 shares of common stock received when Monroe Company was dissolved...... 5,044.41

Total cost or other basis....... $23,019.91

The amount received by petitioner upon the liquidation of Ketler Company was $77,595.59. The Commissioner determined that petitioner had realized a gain measured by the excess of $77,595.59 over his basis for the Ketler Company stock. He then determined that petitioner had realized a long-term capital gain of $54,575.68, of which petitioner would have to account for 50%, or $27,287.84.

Petitioner claims that commencing in 1934 a plan of reorganization was in operation and that it contemplated two steps: (1) the transfer of the plant and equipment from the old to the new corporation so that the business might be continued, and (2) a settlement with the then creditors of the old corporation. Petitioner argues that the series of transactions must be considered collectively, as a single unit, and that when they were concluded petitioner occupied the same position as at the beginning except that he had changed the form of his investment.

■ Although it is not essential that a plan of reorganization be in any particular form or in writing, C. T. Inv. Co. v. Commissioner of Internal Revenue, 8 Cir., 88 F.2d 582, the statute requires that to be tax-free the exchange of stocks or securities must be in pursuance of a plan of reorganization. Something more than an afterthought is essential. Petitioner has the burden of proving the existence of the plan of reorganization. In order for petitioner to prevail on this issue, the series of transactions hereinbefore set forth must spell out an integrated plan of reorganiza-

1. "The term 'reorganization' means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred."

2. Sec. 112(b) (3) provides: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan

of reorganization, exchanged solely for stock or securities in such corporation * * * a party to the reorganization."

Sec. 112(b) (4), entitled "Gain of corporation," provides: "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

826

tion and a distribution of securities pursuant to such plan. Our inquiry must be whether the transactions were so related that they possessed an integrated tax significance or whether each was so isolated and independent as to give rise to a separate tax consequence.

The case was submitted to the Tax Court on a stipulated statement of facts prepared by government counsel and petitioner's accountant. Petitioner was not represented before the Tax Court by legal counsel. Although petitioner's intent might well have been an important element in determining whether a plan of reorganization existed, he did not testify. If any such plan existed, it must be spelled out of the stipulated facts.

■ The Tax Court·found that a plan of reorganization did not exist. In ACF-Brill Motors Co. v. Commissioner of Internal Revenue, 3 Cir., 189 F.2d 704, 707, the court said: "In considering cases of this kind in which it is asserted that a number of transactions are not to be considered separately for tax purposes but are to be regarded merely as steps in a single taxable transaction an analysis of the facts of the individual case is of first importance. But we think that at the very least it must appear that the entire series of transactions has been carried out in accordance with a prearranged plan and that they are in fact component steps of a single transaction."

When Monroe Company leased its property in 1934 to Ketler Company for a 10 year period, and, in exchange for its accounts receivable and other property, acquired the 252 shares of Ketler Company stock, none of the transactions indicated that a plan of reorganization had been conceived and adopted. On the contrary everything pointed to a continuation of the existence of the Monroe Company. The only reference to a transfer of assets of Monroe Company to Ketler Company is the provision in the lease giving an option to Ketler Company to purchase all or a part of the above described property for cash, which referred only to personal property. Had a cash sale taken place, it would have been a taxable transaction and not a

step in a reorganization as defined by Sec. 112(g) (1).

The rental agreement continued to 1937 when the lease was cancelled. The properties were conveyed to Ketler Company, not pursuant to the option, but in exchange for 1,350 shares of the preferred stock of Ketler Company. Even at this date the existence of a plan of reorganization does not emerge to show that the ultimate liquidation of Monroe Company and the acquisition by petitioner of its stock in the Ketler Company were integrated steps.

Moreover the voluntary petition under Sec. 77-B of the Bankruptcy Act, filed in 1935, is not consistent with petitioner's claim that a definite plan of reorganization, formulated in 1934, was being followed.

We cannot say that the finding of the Tax Court that a plan of reorganization did not exist is clearly erroneous. We must sustain the Tax Court's conclusion that the petitioner did not receive the 252 shares of Ketler Company stock in a transaction in which no gain or loss should be recognized.

Petitioner argues as an alternative proposition that if it be held that there was no reorganization of Monroe Company, the cost basis of the 252 shares of Ketler Company was the amount of the indebtedness ($56,241.72) which petitioner cancelled in consideration of the transfer of the stock to him, plus $17,975.50, the cost of the 1,448 shares. Upon dissolution of Ketler Company in 1944 petitioner received $77,595.59. Petitioner contends that his gain was $3,378.37 and that his capital gains tax should have been $844.59, instead of the tax of $14,563.92 which was assessed.

Petitioner also urges that the record does not contain evidence to sustain the Tax Court's finding that the fair market value of the 252 shares on the date of their transfer to him was $5,044.41, and that as this finding is erroneous, having no basis in the evidence, the determination of the deficiency was likewise erroneous because it was based upon such finding.

It was stipulated that the book ·value of the 252 shares was $5,044.41. There was no other ·evidence relating to their fair

market value, unless the purchase agreements for stock which petitioner in effect made with himself might be considered as evidence on that point. The Commissioner did not specifically find that the fair market value was $5,044.41.

■ It is quite evident that the book value of a stock is a very unreliable basis upon which to determine the fair market value. "Book value frequently bears no relationship to actual cash value or fair market value." Anson Evans, 29 B.T.A. 710; Mertens, Sec. 9.87 and 59.14. In Commissioner of Internal Revenue v. McCann, 2 Cir., 146 F.2d 385, 386, the court said: "All we decide is that it was, as matter of law, erroneous to refuse to consider any other factor than the book value at the time of the gift; * * *."

What the fair market value of the 252 shares was when received by petitioner is an important question in this case. Yet it was not litigated, and no evidence was received on that point. In Gould Securities Co., Inc., v. United States, 2 Cir., 96 F.2d 780, the Gould Storage Battery Company and the Gould Coupler Company were owned by the same person. The battery company became indebted to the coupler company for $1,200,000, which indebtedness was cancelled upon delivery of 12,000 shares of its preferred stock to the coupler company. Subsequently a further debt occurred, which resulted in the liquidation of the battery company. The court said, 96 F.2d at page 782: "Since these shares did not then have a fair market value, no profit or loss from the standpoint of taxation was realized when they were taken in exchange for the debt in 1915. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755."

■ Respondent urges however that this court should not consider the matters presented by petitioner in the alternative, because those questions were not raised below. Certainly the rule is that an appellate court ordinarily will not consider questions not raised in the trial court or before the administrative agency. Issues in litigation should not be tried piece-meal. Only in exceptional circumstances will any such questions be considered by an appellate court. In Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 721, 85 L.Ed. 1037, the court said: "Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. * * * Recognition of this general principle has caused this Court to say on a number of occasions that the reviewing court should pass by, without decision, questions which were not urged before the Board of Tax Appeals. But those cases do not announce an inflexible practice, as indeed they could not without doing violence to the statutes which give to Circuit Courts of Appeals reviewing decisions of the Board of Tax Appeals the power to modify, reverse or remand decisions not in accordance with law 'as justice may require.' There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, wherein injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." In that case the Board of Tax Appeals neither found the facts nor considered the applicability of Sec. 22(a) in determining petitioner's tax liability, and the court said, 312 U.S. at page 560, 61 S.Ct. at page 723: "Congress has entrusted the Board with exclusive authority to determine disputed facts. Under these circumstances we do not feel that petitioner should be foreclosed from all opportunity to offer evidence before the Board on this issue, however remote may be his chance to take his case out of the Clifford rule."

In Mitchell v. Commissioner of Internal Revenue, 2 Cir., 187 F.2d 706, 707, the court said: "As the taxpayer did not make this contention in the Tax Court, the Commissioner should have an opportunity, if he desires, to present evidence bearing on that argument. We therefore reverse and remand for a further hearing, at which, of course, taxpayer may also present further evidence in support of his contention."

Petitioner was represented before the Tax Court by an accountant, but was without legal counsel. Whether his accountant had any previous experience in presenting litigated issues to the Tax Court we do not know. Apparently he concentrated his efforts on trying to show Monroe Company had been reorganized within the meaning of Section 112, possibly assuming that other questions were not of importance until there had been a determination of the reorganization question. As a result no evidence was presented by petitioner on the important question of the fair market value of the 252 shares at the time petitioner received them, nor did respondent offer testimony on that question although the Tax Court found it necessary to determine their value in order to compute petitioner's deficiency.

Reluctant as we are to depart from the usual practice of refusing to consider on appeal questions not raised below, we have concluded that this case falls within the purview of the rule of Hormel v. Helvering, supra. Although we sustain the Tax Court on its findings that the 252 shares of stock were not received by petitioner in pursuance of a plan of reorganization, we reverse and remand the case so that petitioner and respondent may offer testimony and a finding may be made by the Tax Court as to the fair market value of the 252 shares of Ketler Company common stock on August 8, 1941, and for such further proceedings as may not be inconsistent with this opinion.

Reversed and remanded.