GOLDSTEIN BROTHERS, Inc.,
Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 11520.

United States Court of Appeals
Seventh Circuit.

April 11, 1956.

As Modified May 18, 1956.

Sol Goodman, Cincinnati, Ohio, M. S. Cassen, Indianapolis, Ind., Goodman & Goodman, Cincinnati, Ohio, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Carolyn R. Just, Attorney, Tax Division, U. S. Dept. of Justice, Washington, D. C., Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before SWAIM and SCHNACKEN-BERG, Circuit Judges, and PLATT, District Judge.

SWAIM, Circuit Judge.

The question in this case is whether or not under the agreed facts the Tax Court erred in determining that there had not been a tax free reorganization within the meaning of Section 112(b) (10) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (10) this being the only section which petitioner claimed to be applicable.

The petitioner in its brief expressly adopted the following statement and findings by the Tax Court of the stipulated facts:

"Goldstein Brothers, a partnership, operated a retail home furnishings business prior to May 1, 1923. On that date Goldstein Bros., Inc., herein referred to as the old corporation, was organized under the laws of Indiana. The stockholders were the members of the partnership and held the original stock in the same proportions as their interests in the partnership. The net assets of the partnership on that date amounted to $434,612.49. The closing balance sheet of the partnership was used as the opening balance sheet of the old corporation except that good will was set up on the books at a value of $280,000 and the outstanding issued capital stock amounted to $714,612.40. 1400 shares of stock of no par value were issued in exchange for the assets of the partnership. On April 14, 1932, 335 shares of preferred stock of $100 par value were issued.

"On January 13, 1934, the old corporation filed a voluntary petition in bankruptcy.

"In February 1934 the petitioner was organized under the name of Washington and Delaware Mercantile Company, with an authorized capital of 335 shares of preferred stock of $100 par value and 500 shares of common stock of no par value. The paid-in capital amounted to $33,500. The common stock was issued on December 31, 1935, to the former stockholders of the old corporation in the same proportions as their holdings in that corporation. This transaction was recorded on the petitioner's books as a debit to good will and credit to capital stock in the amount of $20,500.

"On February 26, 1934, the assets of the old corporation were sold at public auction by the trustee in bankruptcy to the petitioner for $48,025, which sale was approved by the referee in bankruptcy.

"The final report of the trustee in bankruptcy shows as follows:

| | | |
|---|---:|---:|
| Receipts of Trustee | $60,112.62 | |
| Expenses of receiver corporation | 1,844.87 | $58,267.75 |
| | | |
| Disbursements: | | |
| 1st dividend | $16,895.98 | |
| Taxes | 2,616.73 | |
| Wages | 654.98 | |
| Administrative expenses, legal fees, receiver fees, etc. | 10,131.02 | 30,298.71 |
| | | |
| Balance for second and final dividend | | $27,696.04 |
| Total claims of General Creditors | | $84,474.88 |

"In August 1934 the petitioner's name was changed to Goldstein Bros., Inc. The authorized preferred stock was increased at that time and again in 1936.

"In its excess profits tax returns for 1943, 1944 and 1945 the petitioner computed its excess profits tax credit by the invested capital method and used as the basis of the assets acquired at the public auction the basis of those assets in the hands of the old corporation. In the 1943 return the computation was based upon $434,612.49 paid in for 1400 shares of stock in the old corporation, plus $33,500 paid for 335 shares of preferred stock. In determining the deficiencies the respondent took as the basis the cost to the petitioner at the sale, reducing the basis accordingly and resulting in a small excess profits credit.

"The parties agree that the issue is whether there was a reorganization within the meaning of section 112(b) (10), Internal Revenue Code of 1939, so as to entitle the petitioner to use the basis of the assets in the hands of the

old corporation in computing its excess profits credit."

The petitioner insists that the purchase from the trustee in bankruptcy of the assets of the old corporation by the new corporation (the petitioner), which had been created and financed by the stockholders of the old corporation, constituted a tax free reorganization within the meaning of Section 112(b) (10) of the Internal Revenue Code of 1939, which provides that:

"No gain or loss shall be recognized if property of a corporation * * * is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—

"(A) in a receivership, foreclosure, or similar proceeding, or

"(B) in a proceeding under section 77B [11 U.S.C.A. §§ 501–1103] or Chapter X [11 U.S.C.A. §§ 501–676] of the National Bankruptcy Act as amended,

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation."

The parties agree that the petitioner was entitled to use the basis of the purchased assets in the hands of the original corporation if the course of action followed here constituted a tax free reorganization within the meaning of Section 112(b) (10). But the Tax Court held that the events here did not constitute such a reorganization. The taxpayer, insisting that there was such a tax free reorganization, relies on several decisions which are distinguishable either on the facts or on the applicable sections of the statute involved.

In Rex Mfg. Co. v. Commissioner, 7 Cir., 102 F.2d 325, this court held that Section 112(i) (1) (A) of the Revenue Act of 1928, which provided that there must be a continuity of at least 50 per cent of the ownership of the stock in both the old and new corporation to constitute a reorganization, had been complied with even though one of the stockholders had died and at the time in question her stock was being held by the administrator of her estate. In Lewis v. Commissioner, 1 Cir., 176 F.2d 646, 648, the court pointed out that "what took place is patently within a literal interpretation of a statutory definition of reorganization in § 112(g) (1) (D) * * * [of the Code]." In Pebble Springs Distilling Co. v. Commissioner, 23 T.C. 196, affirmed by this court March 7, 1956, 231 F.2d 288, this court held that under the facts of that case there had been a reorganization under Section 112 (g) (1) (D). In Adamston Flat Glass Co. v. Commissioner, 4 Cir., 162 F.2d 875, the court was considering the interpretation and applications of sections of the Revenue Act of 1926 which furnished definitions of a reorganization entirely different than the definition we find in Section 112(b) (10) of the 1939 Code. Southwest Natural Gas Co. v. Commissioner, 5 Cir., 189 F.2d 332, was cited by the petitioner as supporting its proposition that "continuity of interest is established if the stockholders of the bankrupt corporation are in control as stockholders of the new corporation." There the court was determining whether the transaction involved constituted a reorganization under Section 112(g) (1) (A). In that opinion the court pointed out that in some cases the courts had held that mere literal compliance with the provisions of the section there involved was not sufficient to constitute a continuity of interest within the meaning and purpose of the statute. But that decision did not hold or say that there may be a statutory reorganization based merely on continuity of interest where the taxpayer has not brought itself within one of the definitions of reorganization spelled out in Section 112 of the statute.

In the instant case the petitioner insists that it is only the "overall result" which is to be considered where the

stockholders of a bankrupt corporation become stockholders of a new corporation and the assets of the old corporation come into the hands of the new corporation rather than the various steps taken to bring about such results. In support of this contention the petitioner cites Helvering v. Cement Investors, Inc., 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649; and Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775. Neither of those cases involved Section 112(b) (10) of the Code. In each there was a creditors committee, selected by the creditors, to work out a plan of reorganization. In each case the plan was approved by the creditors. As a step in each of those plans there was a bankruptcy proceeding and the bankruptcy court approved the plan. In each case there was a sale by the bankruptcy trustee at which the assets were bid in by the creditors committee and the incorporation of a new company to which the assets were assigned and the new company then carried on the business of the old company. In the Alabama case the Supreme Court held that there was a reorganization within the meaning of Section 112(i) (1) of the Revenue Act of 1928, and in the Cement case that there was a reorganization within the requirements of Section 112(b) (5) of the Revenue Act of 1936. Thus we see that in each of these two cases there was a plan of reorganization, approved by the court, and coming within one of the stated exceptions to the general provision of Section 112 that upon the sale or exchange of properties, the entire amount of the gain or loss should be recognized.

But in the instant case we think the Tax Court correctly held that the petitioner failed to bring itself within the exception spelled out in Section 112(b) (10), the only exception on which the petitioner relies. That exception required that the transfer of the property be pursuant to a plan of reorganization approved by the court and that the transfer be made solely for stock and securities of the new corporation which acquired the property. In this case the evidence failed to show any plan of reorganization; no plan of reorganization was approved by the court, and the consideration for the transfer was cash instead of stock and securities.

In the bankruptcy matter here we find only the usual sale by the bankruptcy trustee at a public auction to the highest bidder for cash. In that sale the assets were first divided into lots and parcels and so offered for bids. The total of the bids on these several lots and parcels amounted to only $30,650. Then, after consulting only with his attorney and the auctioneer, the trustee decided to, and did, offer to sell the entire assets of the old corporation. On this offering the petitioner made a bid of $48,025, which, being the highest bid, was accepted and the petitioner then paid the amount of the bid to the trustee in cash. The appraised value of the property transferred on this sale was $55,671.11, while the proved claims of the creditors amounted to $84,474.88. At the time the assets were offered at the auction neither the old corporation nor its stockholders had any equity in the property which was transferred to the petitioner. Wells Fargo Bank & Union Trust Co. v. United States, 9 Cir., 225 F.2d 298.

As this court said in Ketler v. Commissioner, 7 Cir., 196 F.2d 822, 825:

"Although it is not essential that a plan of reorganization be in any particular form or in writing [citing authority], the statute requires that to be tax-free the exchange of stocks or securities must be in pursuance of a plan of reorganization. Something more than an afterthought is essential. Petitioner has the burden of proving the existence of the plan of reorganization."

In the instant case the petitioner failed to meet its burden of proof. The only evidence before the Tax Court

was the stipulation of facts which we have set out above. That stipulation not only did not require a finding by the Tax Court of a reorganization under Section 112(b) (10), but the stipulation of facts precluded such a finding. The stipulation contained no reference to a plan for reorganization. Instead it showed that the old corporation filed a voluntary petition in bankruptcy, thereby necessarily transferring the assets of the old company over to the bankruptcy trustee for the benefit of its creditors; that the old company's total assets were insufficient to satisfy the demands of its creditors, which means that the stockholders of the old corporation at the time of the sale had no equity in such assets; that the purchase at the trustee's sale was for cash and not in exchange for stock and securities of the new corporation.

Nor did the stipulation of facts show the approval by the court of any plan of reorganization. The petitioner insists that the approval by the court of the sale to the petitioner was an approval of a plan of reorganization. But that approval was merely an approval of the sale of the assets of the bankrupt corporation at public auction to the highest bidder. If the highest bidder had been someone other than petitioner, the sale would have been approved without regard to the identity of the bidder. We think it clear that the idea of a reorganization here was merely an "afterthought" which occurred to the petitioner or its attorneys after all of the steps now claimed to constitute a tax free reorganization had been taken. This court denounced such a claim of reorganization in Ketler v. Commissioner, 7 Cir., 196 F.2d 822, 825.

The decision of the Tax Court that there was not a reorganization under Section 112(b) (10) is

Affirmed.