Robert MYRON, Alan Freeman, Leslie Rosenthal and Richard Mortell, Co-Partners d/b/a Rosenthal & Co., Petitioners,

v.

Dr. Gerald A. CHICOINE and Commodity Futures Trading Commission, Respondents.

Dr. Gerald A. CHICOINE, Cross-Petitioner,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

Nos. 80–1951, 80–2259.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1982.

Decided May 20, 1982.

Dennis J. Mahr, Sioux City, Iowa, Louis Clinton Burr, Chicago, Ill., for petitioners.

Maureen A. Donley, Washington, D. C., for respondent.

Before SWYGERT and PECK *, Senior Circuit Judges, and ESCHBACH, Circuit Judge.

* The Honorable John W. Peck, United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

ESCHBACH, Circuit Judge.

Rosenthal & Co. and Dr. Chicoine cross-petition for review of a Commodity Futures Trading Commission (Commission or CFTC) reparation order issued pursuant to § 14(e) of the Commodity Exchange Act of 1936, as amended, 7 U.S.C. § 18(e). Noting jurisdiction under 7 U.S.C. § 18(g), we affirm the order in part, modify it in part, and remand for further proceedings.

## I

The facts of the underlying controversy between the parties pertinent to the issues raised in this appeal may be stated succinctly. Rosenthal is a registered commodity futures merchant under § 4d of the Commodity Exchange Act, 7 U.S.C. § 6d. In the spring of 1976, one of Rosenthal's salespersons contacted Chicoine to solicit the purchase of a commodity option. The solicitation proved fruitful and, after a number of conversations in which the salesman represented to Chicoine that the investment would be risk free, Chicoine sent Rosenthal checks totaling $5,127.96 for the purchase of a sugar call option on the London Sugar Exchange. Chicoine's entire investment was lost when the option expired worthless in March 1977.

On May 23, 1977, Chicoine filed a complaint against Rosenthal before the CFTC seeking reparations pursuant to § 14 of the Commodity Exchange Act, 7 U.S.C. § 18. The complaint alleged a violation of federal antifraud provisions applicable to option transactions, *viz.* 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.9. Pursuant to 7 U.S.C. § 18(b), an administrative law judge (ALJ) conducted a hearing on the complaint and issued an initial decision as required by 17 C.F.R. § 10.84. The initial decision[1] consisted of detailed factual findings and a general conclusion that Rosenthal, through its agent, had defrauded Chicoine in violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.9. The ALJ awarded reparations to Chicoine of $5,127.96, plus 8% interest from the date of the option's purchase.

Exercising its right to appeal the ALJ's initial decision to the Commission under 17 C.F.R. § 10.102, Rosenthal raised three issues in its application for Commission review, challenging the ALJ's factual findings, his consideration of certain evidence, and the constitutionality of the reparation proceeding. The Commission, in its opinion and order of July 2, 1980,[2] rejected the former arguments on the merits and declined to reach the constitutional question. It ordered Rosenthal to pay Chicoine $5,127.96, and altered the ALJ's interest award, awarding interest at a 12% rate from the date of its order.[3]

Both Rosenthal and Chicoine respectively filed timely[4] petitions for review of the Commission's order[5] and Rosenthal posted an appeal bond as required by 7 U.S.C. § 18(g). Rosenthal, in No. 80–1951, now challenges the constitutionality of the bond

1. The ALJ's initial decision is reported in *Chicoine v. Rosenthal & Co.*, [1977–80 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,618 at 22,535 (1978).

2. The CFTC's opinion and order is reported in *Chicoine v. Rosenthal & Co.*, [1977–80 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 21,075 at 24,341 (1980).

3. In an order entered September 18, 1980, after this court had assumed jurisdiction over this case, the CFTC purported to alter the interest award again. Stating that its July 2, 1980 order had inadvertently awarded interest from the date of its order, as opposed to the date of ALJ's initial decision, it attempted to amend its previous order to correct the error. The Commission's September 18, 1980 order was a nullity; the CFTC was divested of jurisdiction over this case by virtue of the parties' perfected

petitions for review in this court. However, pursuant to our power to modify the Commission's order, *compare* 7 U.S.C. § 18(g) *with* 7 U.S.C. § 9, we hereby alter the award of interest to run from the date of the ALJ's initial decision, May 31, 1978. No purpose would be served by remanding this issue to the Commission.

4. *See generally Baker v. CFTC*, 661 F.2d 871 (10th Cir. 1981); *Bayer v. CFTC*, 626 F.2d 73 (8th Cir. 1980) (per curiam).

5. Chicoine's petition was originally filed in the U.S. Court of Appeals for the Eighth Circuit and was transferred to this court pursuant to 28 U.S.C. § 2112(a). *See generally Rosenthal & Co. v. CFTC*, 658 F.2d 278 (5th Cir. 1981).

requirement, and seeks reversal of the Commission's reparation order, arguing that a finding of willfulness is required to establish a violation of the applicable provisions of the Commodity Exchange Act, and maintaining that the CFTC was biased against it. Chicoine, in his cross-petition No. 80–2259, seeks modification of the CFTC's reparation order, contending that the Commission erred in eliminating the ALJ's award of prejudgment interest.

## II

Rosenthal challenges the constitutionality of 7 U.S.C. § 18(g), which conditions appellate review of reparation orders on the filing of a "bond in double the amount of the reparation awarded against the appellant...." Relying on *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856 (9th Cir. 1976), it argues that the double bond requirement is not rationally related to a legitimate governmental objective and thus constitutes a violation of the Fifth Amendment's due process clause.

In *O'Day* the Ninth Circuit held unconstitutional as applied a provision of the Perishable Agricultural Commodity Act of 1930, 7 U.S.C. § 449g(c) which also required a double bond in order to appeal a reparation award. Finding the rationale of *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) dispositive, the court concluded that the double bond provision lacked a rational basis as applied to the appellant in that case. While acknowledging that "the state may properly condition the right to appeal upon posting security sufficient to protect [an] appellee from loss of damages already awarded, interest, and ... costs on appeal, including a reasonable attorney's fee," it found that the

> automatic doubling of [the reparation award] has no rational relationship to the payment of interest on the award and costs on appeal. If the claim is small, the product will be wholly inadequate; if the claim is large, *as in this case*, it will be grossly excessive.

*O'Day v. George Arakelian Farms, Inc., supra*, 536 F.2d at 860 (emphasis added) (citations omitted).

In *Saharoff v. Stone*, 638 F.2d 90 (9th Cir. 1980), a case not cited by Rosenthal, the Ninth Circuit adhered to the *O'Day* rule in a challenge to 7 U.S.C. § 18(g), the provision attacked by Rosenthal in this case, and invalidated the double bond requirement to the extent it did not approximate the amount necessary to secure payment of the reparation award, interest, and costs (including reasonable attorney's fees) in that case.

 It is a fundamental principle of constitutional adjudication that a court "will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 1011 (Brandeis, J., concurring). In order to invoke a court's power of judicial review, it is incumbent upon a litigant to demonstrate an injury which is real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343(1975). Rosenthal has failed to allege such an injury caused to it by the operation of the double bond provision in this case. It has not even attempted to demonstrate that the actual appeal bond which it posted is substantially greater than the amount necessary to secure complete relief to Chicoine. Indeed, were we to adopt the reasoning espoused by the Ninth Circuit and relied upon by Rosenthal, it may be that Rosenthal has posted an insufficient bond in this case and thus has actually benefited from the provision it seeks to invalidate. Rosenthal lacks standing to challenge the constitutionality of the double bond requirement absent a showing that it has been prejudiced by its application in this case. *It has made no such showing.* We therefore express no view on the constitutionality of 7 U.S.C. § 18(g).[6]

---

**6.** Rosenthal also asserts, without any analysis, that the double bond requirement is a *per se* violation of equal protection because it is only applicable to commodity professionals, based

## III

Rosenthal contends that only willful violations of § 4c(b) of the Commodity Exchange Act, 7 U.S.C. § 6c(b), may subject a registered commodity merchant to a CFTC reparation award in option transactions and attempts to use this case as a vehicle for challenging the CFTC's position that proof of willfulness is not required to establish violations of § 4c(b) or 17 C.F.R. § 32.9, *see* 40 Fed.Reg. 26505 n.2 (June 24, 1975). *See generally CFTC v. U. S. Metals Depository Co.*, 468 F.Supp. 1149, 1162 n.55 (S.D.N.Y. 1979); *CFTC v. J. S. Love & Associates Options, Ltd.*, 422 F.Supp. 652, 659 (S.D.N.Y.1976). *See also CFTC v. Premex, Inc.*, 655 F.2d 779, 782–84 (7th Cir. 1981). Respondents argue that this court should not consider the willfulness issue because the question was not raised below.

Ordinarily an appellate court will refuse to consider questions not presented in administrative proceedings below. *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). *Accord, Beatrice Foods Co. v. FTC*, 540 F.2d 303, 318 n.8 (7th Cir. 1976); *Lloyd A. Fry Roofing Co. v. FTC*, 371 F.2d 277, 286 (7th Cir. 1966); *Ketler v. Commissioner of Internal Revenue*, 196 F.2d 822, 827 (7th Cir. 1952). *Cf. Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (applying principle to appeal from lower court); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (same); *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 642 (7th Cir. 1976) (same). *See generally* 3 K. Davis, Administrative Law Treatise § 20.06 (1958); Fuchs, *Prerequisites to Judicial Review of Administrative Agency Action*, 51 Ind.L.J. 817, 860–69, 892–900, 909–11 (1976). This well established principle, rooted in the doctrines of waiver and exhaustion of administrative remedies, serves several salutary purposes: (1) reducing the delays and increased expense inherent in piecemeal litigation; (2) providing the agency an opportunity to correct its own errors, see *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); (3) contributing to more reasoned decisionmaking by requiring the formulation of issues in the forum which possesses fact finding authority, see *Hormel v. Helvering, supra*, 312 U.S. at 556, 61 S.Ct. at 721; (4) enabling the reviewing court to benefit from the agency's expertise; (5) maintaining the integrity of the separation of powers, see *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented . . . ."); (6) engendering confidence in the efficacy of the administrative process; and, (7) vindicating basic notions of fair play, see *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.")

These purposes will be served by application of the principle in the instant case. We have previously acknowledged that reparation proceedings under 7 U.S.C. § 18 were intended by Congress to be a simple, expeditious, and inexpensive method of adjudicating the complaints of commodity investors. *See Rosenthal & Co. v. CFTC*, 614

on its erroneous assumption that CFTC procedure does not permit a reparation award against other individuals. In fact, 17 C.F.R. § 12.23(b)(2) (1981) authorizes commodity professionals to file counterclaims against customers. In the context of the argument raised by Rosenthal here, it is sufficient to observe that the availability of such relief totally undercuts Rosenthal's conclusory argument. *See Myron*

*v. Martin*, 670 F.2d 49 (5th Cir. 1982). Under current practice, the bond provision is capable of application against customers as well as commodity professionals. However, we express no view concerning the authority of the CFTC to enter reparation orders against customers: no such order was entered in this case, and no party challenges the CFTC's authority in this regard.

F.2d 1121, 1123 (7th Cir. 1980). Thus, the policy of eliminating needless delays and expense fostered by piecemeal litigation is especially salient in appeals from CFTC reparation orders. Moreover, application of waiver and exhaustion principles is particularly called for in such cases given the adjudicatory, adversarial nature of reparation proceedings—the legal issues which govern the development of the factual record should be framed in the adjudicatory forum. Indeed, all of the policies underlying application of the waiver principle are applicable in this case in varying degrees. Moreover, we do not find this to be one of those "exceptional cases" where consideration of "questions of law which were neither pressed nor passed upon by the . . . administrative agency below" is appropriate, *Hormel v. Helvering, supra,* 312 U.S. at 557, 61 S.Ct. at 721.[7]

■ Rosenthal clearly waived the willfulness issue in the CFTC proceedings which spanned several years: it did not raise the question before the ALJ, see 17 C.F.R. § 10.82 (1981), nor did it present the issue to the Commission in its application for review of the ALJ's initial decision, see 17 C.F.R. §§ 10.102(d)(3), 10.104(a) (1981). *See Myron v. Martin,* 670 F.2d 49 (5th Cir., 1982). Instead, Rosenthal argued three issues before the Commission: first, that ten specific factual findings of the ALJ were not supported by the evidence; second, that

the reparation procedure constituted a denial of its Seventh Amendment rights; and, third, that the ALJ's decision was based on improperly considered non-record evidence. Interestingly, not one of these issues is raised in Rosenthal's petition for review of the CFTC order in this court.[8]

Rosenthal now seeks to avoid the consequences of what has proven to be an unsuccessful approach to this lawsuit before the CFTC by injecting the willfulness issue into the case for the first time on appeal. It attempts to justify this tactic and circumvent the waiver rule by contending that the Commission's opinion and order contains a gratuitous discussion of the question and asserting that it has a right to respond to that discussion because of the Commission's opinion's precedential effect. The contention is wholly lacking in merit. First, Rosenthal's premise is fallacious—the opinion does not explicitly address the willfulness question. Furthermore, the extent to which the opinion bears on the issue at all is quite understandable given the procedural history of the case. The ALJ made detailed factual findings, but reached only a general conclusion that the facts demonstrated a violation of § 4c(b) of the Commodity Exchange Act, 7 U.S.C. § 6c(b), and § 32.9 of the CFTC regulations, 17 C.F.R. § 32.9 (1981), entitling Chicoine to reparations. Rosenthal challenged the evidentiary basis of the factual findings but did not challenge

7. Although Rosenthal does not cite any apposite authority to avoid application of the waiver doctrine, we note that other exceptions to the general rule are not implicated in this case. For example, in certain classes of cases at least, a reviewing court will not require exhaustion where the agency does not raise the issue. *See Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); K. Davis, Administrative Law Treatise § 20.13 (Supp. 1982). We need not address the question of whether such an exception is applicable in the context of appeals from CFTC reparation orders since the CFTC opposes review of the willfulness issue in this case on waiver and exhaustion grounds. Moreover, in spite of some scholarly discussion suggesting that *Mathews v. Eldridge, supra,* might be viewed as radically altering the principle that an appel-

late court ordinarily will not decide a question not raised before the administrative agency, see K. Davis, Administrative Law Treatise §§ 20.-11, 20.16 (Supp.1982), we do not view *Mathews* as an abolition of that well established principle.

8. It should be noted that in portions of its reply brief, Rosenthal apparently attempts to transmute its bias argument into an attack on the sufficiency of the evidence. If Rosenthal had wished to litigate in this court the question of whether the CFTC's factual findings were supported by the weight of the evidence, it should have briefed the question initially. Issues first raised on appeal in a reply brief generally will not be considered. *See* Rule 9(e), Circuit Rules of the United States Court of Appeals for the Seventh Circuit. ("A reply brief shall be limited to matter in reply.")

the legal conclusion that such facts, if true, constitute a violation of the Act and regulations. The Commission's order, in the process of upholding the ALJ's findings, more thoroughly explicated its legal conclusions than did the ALJ's initial decision. In doing so, it relied upon its previous cases in reaching an alternative holding which did implicate its long-held position concerning the willfulness issue, but this hardly constitutes a basis for resurrecting Rosenthal's abandoned right to litigate the willfulness issue in this case.

Moreover, given the Commission's holding that Rosenthal's guarantees were affirmative misrepresentations constituting fraud, we fail to see how Rosenthal is in any way prejudiced in this case by the opinion's remote reference to the CFTC's position on *scienter*. As to Rosenthal's assertion concerning the precedential effect of the decision, the short answer is that Rosenthal may litigate the willfulness question in future cases providing it has appropriately raised the issue. It has not done so in this case, and this court "cannot decide a question which will not affect the rights of the litigants before it." *Central Soya Co. v. Consolidated Rail Corp.*, 614 F.2d 684, 687 (7th Cir. 1980).

Rosenthal's final contention is that the Commission's order evidences bias against it. The contention lacks even the remotest support in the record. Rosenthal points to a portion of the order which states that Rosenthal's agent's failure to disclose risk to Chicoine "was, as we have noted, merely one aspect of a larger fraud entailing gross misrepresentations," *Chicoine v. Rosenthal & Co., supra*, Comm.Fut.L.Rep. (CCH) ¶ 21,075 at 24,345, as evidence of this bias. In what can only be characterized as a paranoid interpretation of this language, Rosenthal asserts that the "larger fraud" is a reference to Rosenthal's conduct in other transactions which are the subject of pending CFTC enforcement actions against Rosenthal. The assertion is preposterous.

Manifestly, the quotation is merely a reference to, and restatement of the Commission's earlier findings and conclusions concerning the predictions of guaranteed profits affirmatively made by Rosenthal's agent to Chicoine. See *id.* at 24,343. Thus, Rosenthal has utterly failed to substantiate its charge that the Commission went outside the record of this case in reaching its ruling, and has in no way cast doubt on the presumption that administrative officials dispassionately perform their responsibilities, *see, e.g. United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). *See also, United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

Rosenthal also perceives bias in the Commission's analysis of a risk disclosure letter purportedly signed by Chicoine after the purchase of the option, maintaining that the Commission was not "objective" in its review of the ALJ's decision because it "completely ignored" the effect of the letter. The charge is baseless. The Commission did analyze the effect of the letter, *see Chicoine v. Rosenthal & Co., supra*, Comm. Fut.L.Rep. (CCH) ¶ 21,075 at 24,345 n. 7, and Rosenthal does not contest the merits of that analysis in this court. Instead, it charges bias solely because the Commission did not find its arguments meritorious. The proposition does not survive its statement.

### IV

The final issue in this case is cross-petitioner Chicoine's argument that the CFTC improperly excised the ALJ's award of prejudgment interest.[9]

■ At the outset we observe that an award of prejudgment interest is particularly appropriate in cases involving investment fraud. In order to realize the objective of compensatory relief, prejudgment interest is imposed in certain classes of cases in order to make a party whole. *United States v. California State Board of*

---

9. Rosenthal did not contest the award of prejudgment interest before the Commission nor is

it litigating the issue before this court.

*Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981). The doctrinal basis for such awards is that

> if a defendant has deprived the plaintiff of a specific sum of money, he has also deprived the plaintiff of the interest which the money would have earned in the absence of defendant's breach of duty; unless the plaintiff is paid interest for the entire time that he is deprived of the use of his money, he will not receive full compensation.

*Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1075 (7th Cir. 1975), *vacated and remanded on other grounds*, 425 U.S. 929, 96 S.Ct. 1659, 48 L.Ed.2d 172 (1976). *See generally*, D. Dobbs, Remedies § 3.5 (1973). This rationale is persuasive in cases involving investments because by entering into such a transaction, the investor has manifested his intention to utilize the funds for the production of income. *See generally, Madigan, Inc. v. Goodman*, 498 F.2d 233, 240 (9th Cir. 1974). Thus, while a prejudgment interest award may not afford the investor relief commensurate with his expectations of profit, it does afford a rough approximation of this interest. *See generally, Sigefus v. Porter*, 179 U.S. 116, 118–20, 21 S.Ct. 34, 35, 45 L.Ed. 113 (1900).

■ Given the compensatory basis of awarding prejudgment interest and the remedial purposes of CFTC reparation proceedings, we have no doubt that the Commission may award such relief in appropriate cases. Nevertheless, the decision to award prejudgment interest rests in the sound discretion of the adjudicatory tribunal and involves a balancing of the equities between the parties under the circumstances of the particular case. *United States v. California State Board of Equalization, supra*, 650 F.2d at 1132. *See Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962); *Sanders v. John Nuveen & Co., supra*, 525 F.2d at 1075.

■ In the instant case, the ALJ ostensibly determined, albeit *sub silentio*, that a prejudgment interest award was warranted. However, the Commission, acting *sua sponte* and relying upon its decision in *Sher-*

*wood v. Madda Trading Co.*, [1977–80 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,728 at 23,026 (1979), eliminated the award because the ALJ had failed to articulate his reasons for awarding prejudgment interest. The Commission made no independent review of the facts to determine whether prejudgment interest was justified under the circumstances of the case, nor did it remand the case to the ALJ to make explicit his rationale. Instead, it arbitrarily excised the award and thus committed essentially the same error which formed its basis for rejecting the ALJ's unexplained holding—a failure to exercise discretion.

While the Commission's handling of the prejudgment interest issue constituted an abuse of discretion, it would be inappropriate for this reviewing court to engage in a balancing of the equities of these parties in the absence of such an analysis by the Commission or the ALJ. The initial determination of this issue is committed to agency discretion. Since the Commission has failed to exercise its discretion, the proper course for us to follow is to remand the case to the agency for an exercise of its discretion on this issue. *Compare Florida Power & Light Co. v. Costle*, 650 F.2d 579, 590 (5th Cir. 1981) *with Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 50 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), *appeal after remand*, 637 F.2d 77, 86–87 (1980). Such a remand, typical under these circumstances, is especially appropriate here. The CFTC is a recent congressional creation, established by the Commodity Futures Trading Commission Act of 1974, Pub.L.No.93–463, 88 Stat. 1289, and is still in the process of establishing its approach to implementing the overhauled Commodity Exchange Act and refining its methods of adjudicating reparation claims. Illustrative of this process of maturation is its recent decision in *Ruddy v. First Commodity Corp. of Boston*, CFTC Docket No. R 76–24, at 15 n. 18 (Mar. 31, 1981) in which the Commission modified the rule announced in *Sherwood v. Madda Trading Co., supra*, and held that prejudgment interest awards, "while a matter of discretion,

should hereafter be the rule, rather than the exception" in certain types of cases. Such generalities, however, will only begin to have substantive meaning when a forum must apply them to specific factual settings. By engaging in an actual adjudication of such issues, the Commission will be in a position to develop a reasoned, principled approach to the prejudgment interest question in the specific context of the statutory scheme which it has the primary responsibility for implementing. This court should not and will not preempt Commission analysis of this issue by performing the Commission's function of weighing the equities of the parties in a particular case, uninformed by the CFTC's assessment of the relative equities.

### V

Accordingly, the order appealed from is hereby affirmed, as modified herein,[10] and is vacated in part and remanded to the Commission for further proceedings consistent with this opinion. Specifically, we affirm in No. 80–1951; and in No. 80–2259 we vacate that portion of the order disposing of the prejudgment interest question and remand for a Commission exercise of discretion as to whether an award of prejudgment interest is appropriate under the facts of this case.[11]

---

10. See note 3 *supra*.

11. Since Chicoine has prevailed in No. 80–1951, Rosenthal is liable to Chicoine for costs and reasonable attorney's fees in *that* appeal; such costs and fees, together with the reparation award as modified herein, to be satisfied from the bond posted by Rosenthal. See 7 U.S.C. § 18(g). Costs in No. 80–2259 taxed per Fed.R. App.Proc. 39(b).