## GOULD SECURITIES CO., Inc., v. UNITED STATES.

### No. 269.

Circuit Court of Appeals, Second Circuit.

May 9, 1938.

Lamar Hardy, U. S. Atty., of New York City (John W. Burke, Jr., Asst. U. S. Atty., of New York City, of counsel), for the United States.

Greene & Greene, of New York City (James L. Dohr and Daniel S. Murphy, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The predecessor of the appellant, the Gould Coupler Company, which is for present purposes to be treated as one with the appellant, was assessed, and it paid, income taxes for the year 1925 in an amount which is now claimed to have been excessive. It has brought this suit under the Tucker Act, 28 U.S.C.A. § 41 (20), and has recovered a judgment for the overpayment claimed with interest. The government has appealed.

The dispute came about in this way. In 1915 the Gould Storage Battery Company owed the Gould Coupler Company on open account a debt which with interest amounted to $1,200,000. The common stock control of both these corporations was then held by one Charles A. Gould and neither corporation had owned any stock of the other. The Coupler Company had been successful in business; but the Battery Company had been making net profits only in some years and had sustained net losses in others. Apparently it had been able to conduct its affairs in such a way, largely because of its close business tie-in with the Coupler Company, that without actually being successful the prospect of success was constantly present. In 1915 it was one of only two manufacturers of storage batteries in this country able to supply battery equipment for submarines and its business outlook was certainly promising, especially if its connection with the Coupler Company remained unbroken.

On February 28, 1915, the Battery Company issued 12,000 shares of preferred stock, having a par value of $100 and a dividend rate of 6 per centum, all of which the Coupler Company took in exchange for the debt the Battery Company owed it. The two corporations thereafter continued to do business in close association, without any dividends having been paid on this preferred stock or any of it having been sold, until the Battery Company was dissolved on September 30, 1924. During the part of this period consisting of the years 1917 to 1923, inclusive, the Battery Company sustained operating losses amounting to $1,202,037.32 which were deducted from income in affiliated returns filed by it and the Coupler Company. And

when the Battery Company was dissolved it owed the Coupler Company $2,795,774.-81. After its other debts were paid, it had left assets worth $1,633,642.54 which were taken over by the Coupler Company in partial satisfaction of its debt, leaving nothing for distribution on account of the preferred stock.

The Coupler Company in its return for 1924 took a deduction for loss sustained upon the dissolution of the Battery Company, as a result of which these preferred shares became worthless, which was computed upon a cost basis for them of $1,200,000. The government admits that the shares then became worthless; but denies that the taxpayer then sustained any deductible loss. However, a loss so computed was allowed as a deduction by the Commissioner in his audit of the taxpayer's 1924 return. He ruled that the year 1924 should be divided into two tax computing periods, one from January 1 to September 30, and one from October 1 to December 31, and determined a net loss sustained by the Coupler Company of $538,832.47 for the first period and a net loss uncomputed for the entire year.

The Coupler Company filed its return for 1925 in which it carried over its 1924 net loss as a deduction. Upon examination by the Commissioner the net loss deduction carried over from 1924 was disallowed and that resulted in the assessment, on or about December 19, 1930, of an additional tax which the appellee paid.

It seasonably filed a claim for the refund of the additional tax paid on the ground that it was entitled to deduct its net loss for the first nine months of 1924 from its income for the last three months of that year and to carry forward the excess of the net loss as a deduction from its 1925 income as provided in section 206 of the Revenue Act of 1924, 43 Stat. 260. The claim for refund was disallowed in full; not upon any denial of the right to carry forward and deduct as claimed an actual 1924 net loss but on the ground that there was in fact no such net loss for the reason that the basis of the preferred shares taken in the 1924 audit at $1,-200,000 was not that amount but instead only $815,535.39 which was found to be their fair market value when the Coupler Company acquired them on February 28, 1915.

It is undisputed that, if the cost basis to be given the preferred shares is $1,-200,000, the admitted cost to the appellee of what it exchanged for them, the judgment below was right. And it is also undisputed that, if the shares had a fair market value when acquired in the amount for which the government contends, the appellee may not recover anything in this suit. And so the first issue on this appeal is whether or not these shares had a fair market value when they were acquired by the taxpayer. If that goes against the government, it is not only the first but it is the decisive issue.

■ The trial court filed findings of fact among which is the flat finding that "said stock had no market value at any time." As failure to find that the shares did have a fair market value on February 28, 1915, was assigned as error, we must determine whether the above finding is supported by substantial evidence. If so, it is binding upon us. Pressed Steel Car Co. v. Union Pac. R. Co., 2 Cir., 297 F. 788; Dooley v. Pease, 180 U.S. 126, 21 S.Ct. 329, 45 L.Ed. 457.

■■ That the finding is so supported is abundantly clear. We agree that the stock may have had a fair market value despite the fact that none of it was ever sold. But, though there was adequate proof that the shares had actual value, that does not require a finding that they had a fair market value. Commissioner v. Newbury, 7 Cir., 80 F.2d 631. The existence of the latter, or the contrary, depends upon all the relevant circumstances in each instance. Here there were two corporations closely working with each other and the one with whose stock we are now concerned was buoyed up largely by the credit extended to it by the other. Had this business association been broken, the prospects of the Battery Company would certainly have been dimmed. We don't know whether the sale of these shares would have affected such business relationship or not. We do know, however, that the 1915 position of the Battery Company was highly speculative. It had no history of sound financial success. It may be that outside interests would have cared to buy into the corporation by way of these preferred shares but that seems unlikely on this evidence. The fair and sensible conclusion to be drawn from the evidence is so to the contrary and in accord with the finding of the trial judge that the fact of no market value is established by the find-

ing. There was, indeed, here no sound reason for believing that in 1915 the tax-payer was willing to sell or that there was any buyer willing to pay a fair price for the shares. See Mount v. Commissioner, 2 Cir., 48 F.2d 550.

Since these shares did not then have a fair market value, no profit or loss from the standpoint of taxation was realized when they were taken in exchange for the debt in 1915. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755. When they became worthless in 1924, therefore, the loss sustained was the amount of the advances which the taxpayer had cancel-led in exchange for the stock. United States v. Tillinghast, 1 Cir., 69 F.2d 718.

Judgment affirmed.