GEORGE A. SHAHEEN and EDITH A. SHAHEEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shaheen v. Commissioner
Docket No. 622-80.
United States Tax Court
T.C. Memo 1982-445; 1982 Tax Ct. Memo LEXIS 302; 44 T.C.M. (CCH) 694; T.C.M. (RIA) 82445; August 3, 1982. *302 Petitioners received a partnership interest from B and J in exchange for discharging B and J's indebtedness to petitioners. Held, the basis of a partnership interest received in exchange for the cancellation of indebtedness is limited to the fair market value of the interest at the time acquired, unless such interest has no ascertainable fair market value, in which case the basis for such interest is the face amount of the indebtedness discharged. Secs. 742, 1012, I.R.C. 1954. Held further, petitioners failed to establish the fair market value of the partnership interest and failed to show that the interest had no ascertainable fair market value. Since petitioners' share of partnership loss is allowable only to the extent of the adjusted basis of the partnership interest at the end of each partnership year in question, sec. 704(d), I.R.C. 1954, and since such basis was zero at the end of each such year, petitioners may deduct no partnership losses for such years. Charles Haydon, for the petitioners. Ralph A. Eppensteiner, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioners' federal income taxes as follows: *303 Year
Deficiency
1974
$16,713
1975
16,639
1976
16,869
The issue for decision is whether petitioners are entitled to deduct certain amounts in each year as a distributive share of partnership losses suffered by the Hunter House - Home for Adults. To resolve this issue we must decide whether petitioners established a sufficient basis in a partnership interest to satisfy the section 704(d)[1] limitation on the allowance of losses. FINDINGS OF FACT Some of the facts are stipulated. The stipulation and its attached exhibits are incorporated herein by reference. Petitioners resided in Fayetteville, New York, when they filed the petition in this case. In the federal tax returns filed for the years in issue petitioner George Shaheen listed his occupation as "physician." Petitioner Edith Shaheen listed her occupation as "housewife - real estate agent." This case concerns petitioners' participation in 1974-1976 in a nursing home project which was managed by Emanuel Birnbaum (hereafter "Birnbaum") and Desdemona Jones (now Desdemona Jones-Caruso). Edith Shaheen and Desdemona *304 Jones are sisters. Desdemona Jones was married to John Jones until his death on September 29, 1972. Prior to his death John Jones had participated with Birnbaum in several nursing home ventures. George Shaheen was a close friend of Birnbaum and the Joneses during all relevant periods. John Jones and Birnbaum started doing business together in 1965. Between 1966 and 1971 the Shaheens advanced certain sums of money to Birnbaum, the Joneses or to one of their corporations or partnerships to assist them in the nursing home business. The advances totaled $80,016. The Shaheens had no previous equity interest in the companies to which funds were advanced. Also, they did not receive an equity interest in the companies benefited by the advances in exchange for the funds. It was understood by Birnbaum and George Shaheen that the advances from the Shaheens created a joint personal liability of John Jones and Birnbaum to repay the amounts whenever they were able to repay them. The Shaheens received no note or other writing evidencing indebtedness. Also, they did not charge interest or establish security for repayment of the loans. Although George Shaheen several times inquired about repayment *305 he never demanded repayment or established a schedule for repayment. When John Jones died the Shaheens did not make a claim concerning these advances against his estate. None of the advanced amounts was repaid. From 1970 to 1972 Birnbaum and John Jones established plans, received estimates and obtained authorizations for renovating the Hotel Utica in Utica, New York, and converting it into a nursing home. John Jones died September 29, 1972. Desdemona Jones (hereafter "Jones") took over John Jones' interest in the nursing home ventures at her husband's death. The Hotel Utica project included a corporation and a partnership. The corporation, Hotel Utica, Inc., owned the land, building, fixtures and furniture used in the venture. Birnbaum and Jones were the only shareholders of the corporation. The partnership operated the nursing home. Initially, Birnbaum and Jones were the only partners in the partnership. Although a formal partnership agreement was signed November 16, 1972, the partnership existed prior to that date. Birnbaum and Jones each agreed to contribute $25,000 in cash or prepaid items to the partnership in exchange for their partnership interest. Originally the partnership *306 was named Kennedy Towers - Home for Adults. The name was changed on April 5, 1974, to The Hunter House - Home for Adults (hereafter the "partnership"). The partnership leased the facilities from the corporation pursuant to a lease signed November 1, 1972. The lease, among other things, required the partnership to pay a minimum annual rental of $415,915 which commenced the month the nursing home was ready for occupancy.The partnership paid the rental stipulated in the lease to the corporation during the years in issue. Birnbaum and Jones also arranged financing for the Hotel Utica project during the last part of 1972. On December 11, 1972, they received a commitment letter from a bank for a $2,100,000 loan. The mortgage was closed on February 23, 1973. The loan and mortgage were made with the corporation, Hotel Utica, Inc. Birnbaum and Jones prepared a projection of income and expenses for the Hotel Utica project and submitted it to the bank as part of the loan application. The summary of this projection provided: Net Profit Before
Assumed
Loan Amortization
Occupancy
Year
or Income Taxes
Rate
1st
$129,994
39.3%
2nd
265,746
67.6%
3rd
502,963
91.6%
This projection made no provision for loan amortization. *307 The commitment letter for the $2,100,000 loan provided that the loan would be repaid over 20 years at a rate of $237,096 per year. The projection also ignored the two-entity form of the venture because it made no provision for the $415,915 annual rental payable by the partnership to the corporation. Renovation costs in 1973 exceeded expectations. Consequently, the corporation made an additional mortgage for an additional $600,000 loan on December 6, 1973. On June 6, 1974, the total $2,700,000 mortgage was assigned to the Rochester Savings Bank. Birnbaum and Jones guaranteed the first $945,000 of this loan. At this time the project was almost complete. The project, however, required a final $100,000 for equipment. Therefore, on June 6, 1974, the corporation got a $100,000 loan from the First Trust & Deposit Company. The loan agreement required both Hotel Utica, Inc. and the partnership to maintain $50,000 of working capital during the 5-year term of the loan. Birnbaum and Jones guaranteed this $100,000 loan. The Shaheens also guaranteed this loan. During June, 1974, the Shaheens, Birnbaum and Jones made an agreement whereby the Shaheens would participate in the partnership. *308 The agreement, as reduced to writing the following year, provided: MEMORANDUM OF AGREEMENT: July 22, 1975 This memorandum is made and entered into between EMANUEL BIRNBAUM and DESDEMONA JONES, hereinafter designated First Parties and GEORGE A. SHAHEEN and EDITH A. SHAHEEN, husband and wife, designated Second Parties: WHEREAS, heretofore on various occasions, Second Parties between February 11, 1966 and August 9, 1971 advanced by way of loan various sums of money which were employed in various Birnbaum and Jones enterprises and totaling altogether in excess of $80,000, no part of which has been repaid; and WHEREAS, Second Parties have also acted as guarantors of a $100,000 bank loan for the benefit of First Parties consummated in June 1974; and WHEREAS, the parties have heretofore agreed that there should be allocated to Second Parties a capital account in the Hunter House operating partnership in the amount of $100,000 to consist of $80,000 paid in capital in discharge of the $80,000 previous advances and $20,000 subscribed capital and Second Parties are to possess in said Hunter House partnership, effective as of January 1, 1974, a 25% interest in the profits and losses of the Hunter *309 House partnership with an annual limitation of $33,333.33 for either profits or losses; and WHEREAS, the parties have agreed that the interest of Second Parties should be solely limited to sharing in the profits and losses as stated with First Parties to continue as the sole General Partners in the operation of the said Hunter House Proprietary Home for Adults at the Hotel Utica premises at Lafayette Street in Utica, NY: NOW THIS AGREEMENT WITNESSETH: 1. The parties agree that this memorandum shall serve as a reduction to writing of the oral arrangement entered into by the parties in the year 1974 to which arrangement the parties have abided to this date. 2. The parties agree that Second Parties shall cease to have an interest in the Hunter House operation, at any time that the said capital account of $100,000 with additions and subtractions based upon earnings, losses, additional contributions or withdrawals may be reduced to zero. 3. The Second Parties shall have the privilege of making additional capital contributions to maintain their said interest in sharing in profits and losses; but if said privilege is not exercised within 30 days after notice that the capital account *310 has been exhausted, then all interest of Second Parties shall terminate. 4. At any time there is a balance in the capital account of Second Parties, First Parties have the privilege of terminating the relationship by tendering to the Second Parties the net balance of the Capital account of Second Parties and the additional sum of $50,000 in cash or bank funds; IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written. /s/ EMANUAL [sic] BIRNBAUM /s/ DESDEMONA JONES /s/ GEORGE A. SHAHEEN /s/ EDITH A. SHAHEEN The Shaheens never participated directly or indirectly in the management or control of the partnership or in its operation of the nursing home. The partnership's business certificate was not amended to reflect participation by the Shaheens. Also, the Shaheens' participation in the partnership was not reported to the state authorities who regulated the operation of nursing homes. When the Hotel Utica project began operating as a nursing home in 1974 many of its patients were individuals who recently had been released from psychiatric centers. The appearance of many former psychiatric patients in Utica induced local opposition *311 to the operation. In reaction to local concern the county executive restricted the nursing home so that no more than 50 percent of its potential occupancy could be composed of dischargees from psychiatric institutes. Also, health professionals hesitated to recommend the home to people who were not dischargees of psychiatric institutes due to the presence of many former psychiatric patients at the home. Consequently, the nursing home operated at about 50 percent capacity from the time it commenced operations. The partnership reported the following losses in its calendar year returns for 1974-1976: Year
Loss
1974
$284,768
1975
350,197
1976
297,208
The Shaheens reported the following amounts as their distributive share of the partnership's losses: Year
Loss
1974
$33,333
1975
33,333
1976
33,334
The Shaheens ceased to be characterized as partners of the partnership after 1976. In a deficiency notice dated October 16, 1979, the respondent disallowed these losses for the following reasons: (1) You have failed to establish your interest in that entity was that of a partner; (2) You have failed to establish the adjusted basis of your alleged interest in the entity as of the end of each of those years; *312 and (3) It is determined that the provisions in the alleged agreement upon which your claimed loss was computed do not have substantial economic effect and did have, as their principal purpose, the avoidance or evasion of your personal income taxes. OPINION The question for decision is whether petitioners are entitled to a distributive share of partnership losses suffered by the Hunter House - Home for Adults. Respondent determined that petitioners failed to establish a basis for their alleged partnership interest. Therefore, respondent argues, section 704(d) disallows petitioners' partnership losses. Petitioners assert that their basis in their partnership interest was $180,000 when they entered the partnership in 1974. Petitioners claim that this basis arises from the $80,016 discharge of indebtedness and the guarantee of the $100,000 loan. For the reasons discussed below we agree with respondent's conclusion that petitioners have failed to establish a basis in a partnership interest and thus are barred by section 704(d) from deducting the partnership losses. Due to our conclusion on this issue we do not have to consider the parties' arguments concerning respondent's alternative *313 grounds for disallowing the losses. The relevant part of section 704(d) provides: (d) LIMITATION ON ALLOWANCE OF LOSSES -- A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Petitioners have the burden of proving that they had an adequate basis in their partnership interest to take deductions for the partnership losses. Rule 142(a). [2] A new partner's basis in his partnership interest is determined under sections 722 and 742. Section 722 provides: SEC. 722. BASIS OF CONTRIBUTING PARTNER'S INTEREST. The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized to the contributing partner at such time. Section 742 provides: SEC. 742. BASIS OF TRANSFEREE PARTNER'S INTEREST. The *314 basis of an interest in a partnership acquired other than by contribution shall be determined under part II of subchapter O (sec. 1011 and following). Section 1012 provides the general rule applicable to the sale or exchange of partnership interests: "[t]he basis of property shall be the cost of such property * * *." In this case petitioners contend that they received a partnership interest in return for discharging the $80,016 indebtedness of Birnbaum and John Jones and for guaranteeing Hotel Utica, Inc.'s $100,000 debt to the First Trust & Deposit Company. We will analyze the discharge and the guarantee separately. Petitioners concede that the discharge of personal debts of Birnbaum and John Jones does not constitute a contribution to the partnership which could produce section 722 basis. Petitioners argue, however, that they received the partnership interest in exchange for the discharge, thus generating section 742 basis. We find that petitioners' exchange theory does not help them in this case because petitioners failed to establish the value of the partnership interest they received. If a creditor receives property in exchange for discharging a debt then the debt is considered *315 paid to the extent of the fair market value of the property acquired. If the amount of the debt exceeds the fair market value of the property received then the excess is deductible as a section 166 bad debt deduction. The creditor's basis in the acquired property is its fair market value at the time it is received. Commissioner v. Spreckels,120 F.2d 517 (9th Cir. 1941), affg. a Memorandum Opinion of the Board of Tax Appeals; Kohn v. Commissioner,16 T.C. 960 (1951), affd. 197 F.2d 480 (2d Cir. 1952). [3] Petitioners bear the burden of proving the fair market value of the acquired property. Rule 142(a). Petitioners make several arguments to support their contention that their partnership interest was worth at least $180,000 when they received it. Unfortunately for petitioners their arguments are not convincing. Petitioners contend that the lease with Hotel Utica, Inc., the $50,000 working capital requirement contained in the loan agreement with the First Trust & Deposit Company and the $25,000 capital contribution requirement from both Birnbaum and Jones contained in the original partnership agreement gave their partnership *316 interest value.There is no evidence, however, that the lease was valuable or that the partnership complied with the $50,000 working capital requirement. Also, the capital contribution requirement contained in the 1972 partnership agreement fails to establish any value for a partnership interest in 1974. Petitioners also claim that Birnbaum and Jones each invested $300,000 of their own money in the project and that these contributions indicate that substantial value existed for their partnership interest. Again, however, no indication exists concerning the timing of these contributions or the impact on the value of the partnership interest when acquired by petitioners. Also, the circumstances indicate that Birnbaum and Jones made the contributions to their corporation rather than to their partnership. These facts, therefore, do not help petitioners prove the fair market value of the partnership interest they received. Petitioners introduced nothing else which would assist the Court in determining the value of their partnership interest on acquisition. On these facts we find that petitioners failed to satisfy their burden of proof on the valuation issue. Therefore, we hold petitioners *317 established no basis in their partnership interest arising from the discharge of indebtedness. Petitioners cite Gould Securities Co. v. United States,96 F.2d 780 (2d Cir. 1938), Society Brand Clothes, Inc. v. Commissioner,18 T.C. 304 (1952), and Sargent v. Commissioner,T.C. Memo. 1970-214, as support for their contention that the basis in property received in exchange for the discharge of indebtedness is the amount of debt discharged. [4] Petitioners can find no solace in these cases, however, because they squarely hold that the basis equals the entire discharge amount only if (1) the fair market value of the acquired property meets or exceeds the discharge amount; or (2) the acquired property has no ascertainable value. As discussed previously petitioners failed to carry their burden of proving the value of the acquired property. Obviously, they introduced no evidence that the acquired property had no ascertainable value. Contrast Gould Securities Co. v. United States,supra;Society Brand Clothes, Inc. v. Commissioner,supra;Sargent v. Commissioner,supra.Petitioners must suffer the consequences of the record they produced. Therefore, we hold that petitioners have no basis arising *318 from the discharge. Petitioners contend that they have section 722 basis in their partnership interest arising from the guarantee of Hotel Utica, Inc.'s $100,000 loan from the First Trust & Deposit Company. Respondent argues that the guarantee of the corporate debt cannot constitute a contribution to the partnership and thus cannot create section 722 basis. Petitioners argue that the corporation was an empty shell which was created solely to avoid New York usury laws. Petitioners ask us to ignore the corporate form and to consider the guarantee as a contribution to the partnership.[5] *319 We have previously considered taxpayers' arguments that a corporation should be ignored for federal tax purposes because it was formed to avoid New York's usury statutes. In Strong v. Commissioner,66 T.C. 12, 21-22 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977), we stated: The principal guidepost on the road to recognition of the corporate entity is Moline Properties v. Commissioner,319 U.S. 436 (1943). * * * The Court held that the corporation was a separate entity from its inception, and stated its rule of decision as follows: The doctrine of corporate entity fills a useful purpose *320 in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * In Burnet v. Commonwealth Improvement Co.,287 U.S. 415, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages. [319 U.S. at 438-439.Fn. refs. omitted; emphasis supplied.] In cases such as this case in which a corporation was formed to circumvent the New York usury statutes and in which the corporation held title to and mortgaged property, borrowed money, entered leases with respect to the property and received rent checks we held that the corporation satisfied the Moline *321 Properties test. Strong v. Commissioner,supra;Ogiony v. Commissioner,617 F.2d 14 (2d Cir. 1980), affg. a Memorandum Opinion of this Court. [6] We see no reason to adopt a different approach in this case. We hold that Hotel Utica, Inc. may not be disregarded. Consequently, petitioners made no contributions to the partnership and thus can get no section 722 basis for guaranteeing the corporation's loans. [7] Because petitioners failed to establish a basis in their partnership interest at the end of 1974, 1975 and 1976 section 704(d) disallows deductions for petitioners' distributive share of partnership losses. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in issue.↩
2. All references to Rules are to Tax Court Rules of Practice and Procedure.↩
3. See also Sargent v. Commissioner,T.C. Memo. 1970-214↩.
4. In their opening brief, petitioners complain (at p. 19) that "[t]here was no attack [by respondent] on the fair value of the interest acquired by petitioners." We find this argument rather disingenuous, given the fact that the fair market value of the consideration received in exchange for forgiveness of indebtedness was the very heart of the issue raised in these three cases so strongly relied upon by petitioners.↩
5. Because we decide that the corporate form may not be ignored we do not have to decide if a guarantee constitutes a contribution which would increase a partner's sec. 722 basis. But see sec. 1.722-1, Income Tax Regs.↩; 1 W.McKee, W.Nelson & R.Whitmire, Federal Taxation of Partnerships and Partners sec. 4.02 [1] (1977). Petitioners' argument for disregarding the corporate form must be addressed because if the corporation were ignored then petitioners could make the argument that the corporate liabilities became, in effect, partnership liabilities, an increase in which (to the extent of petitioners' share) would be treated as a contribution of money to the partnership, and consequently would increase the basis of petitioners' partnership interest. Sec. 752(a); 722.
6. See also Sarkisian v. Commissioner,T.C. Memo. 1982-199↩. 7. We note the petitioners make no argument that Hotel Utica, Inc. was merely the agent of the partnership. See Roccaforte v. Commissioner,77 T.C. 263 (1981), on appeal (5th Cir. Feb. 4, 1982). See Sarkisian v. Commissioner,T.C. Memo. 1982-199↩, in which we held on facts very similar to the facts in this case that the corporation was not merely an agent.