DAVID LITZENBERG AND PAT LITZENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Litzenberg v. Commissioner
Docket No. 11406-87
United States Tax Court
T.C. Memo 1988-482; 1988 Tax Ct. Memo LEXIS 555; 56 T.C.M. (CCH) 413; T.C.M. (RIA) 88482; October 4, 1988
*555 David Litzenberg, in 1981, accepted five horses from a neighbor in satisfaction of a $74,994 debt. Though Litzenberg raced and bred the horses, he lost money; one of the horses was destroyed. The Service determined deficiencies with respect to David Litzenberg's 1982 through 1984 taxes, contending Litzenberg's horse breeding activities were not engaged in with a profit motive. Accordingly, the Service contended that Litzenberg could not deduct horse breeding expenses. The Service also disputed Litzenberg's claimed casualty loss for the destruction of a horse. Litzenberg petitioned the Tax Court, which considered his profit motive, whether the destroyed horse was owned by Litzenberg, and the amount of Litzenberg's depreciable basis in the remaining horses. After a trial, the court held that Litzenberg had engaged in horse breeding with a profit motive. The court noted that Litzenberg had entered the horse breeding business by accident (accepting the horses in satisfaction of a debt) and had tried to make it a financial success, rather than writing off the entire debt that his neighbor was unable to pay. The court also determined that the five horses had a total fair market value *556 at the time of their transfer of $29,800, leaving $45,194 of debt unsatisfied. During Rule 155 computations, Litzenberg sought to claim Schedule D capital losses on his 1982 return, even though the deficiency notice had not made any adjustments to Schedule D items reported on that return. The losses represented capital loss carryover of the difference between the horses' fair market value and the amount of the debt partially satisfied. The Service argued that Litzenberg was barred from bringing up this claim in Rule 155 proceedings since it constituted a new argument. Litzenberg also argued that he could claim the difference between the horses' value and the debt partially satisfied as a bad debt deduction for 1981, carried over to 1982. The Service again objected, arguing that it constituted a new issue that related to a tax year (1981) not in issue. Tax Court Judge Parker has ruled that Litzenberg is bound by the Service's initial computations, which do not reflect the difference between the value of the horses and the debt partially satisfied. Judge Parker concluded that Litzenberg was improperly attempting to raise new issues. "Rule 155," Judge Parker wrote, "is not an 'open *557 sesame' for either party to get adjustments for issues not raised in the deficiency notice, in the pleadings, in the pre-trial memoranda, or at trial." Barry Becker, for the petitioners. Anne W. Durning, for the respondent. PARKER
MEMORANDUM OPINION PARKER, JUDGE: This case is before the Court on disputes arising in regard to the parties' computations under Rule 155, Tax Court Rules of Practice and Procedure.[1] After receipt of the parties' conflicting Rule 155 computations on June 23, 1988 and June 24, 1988, the Court in conference telephone calls with the parties attempted to expedite entry of decision by thoroughly exploring the nature of the differences in the parties' respective computations and suggesting a possible negotiated approach to resolve their differences. The Court then awaited the parties' agreed-upon computation and a stipulated decision document. Instead the Court has received another round of computations. Respondent's revised computations were filed on August 22, 1988, and petitioners' revised computations were filed on September 1, 1988. In effect, both parties now want to pick *559 and choose among various items that are not and have never been involved in this case. ISSUES LITIGATED AND DECIDED By statutory notice of deficiency dated April 14, 1987, respondent determined deficiencies in petitioners' Federal income taxes for the years 1982, 1983, and 1984 in the amounts of $50,830, $30,630, and $27,061, respectively. Some issues raised in the deficiency notice were resolved in the parties' stipulation of facts. This case was tried in Phoenix, Arizona on April 14, 1988. At trial three issues were presented to the Court, namely, (1) whether petitioners' horse breeding and racing activity was an "activity not engaged in for profit" under section 183; (2) whether petitioners were entitled to a casualty loss of $6,150 for the destruction of the horse, Mister Mitch, in 1982; and (3) if petitioners were entitled to deduct expenses in connection with their horse breeding and racing activity, whether petitioners had established *560 the basis in their horses for purposes of loss or depreciation deductions on their Schedule F for the years 1982, 1983, and 1984. Those were the only issues raised or tried during the trial on April 14, 1988. On April 18, 1988, the Court recalled the case and rendered its oral findings of fact and opinion pursuant to section 7459(b) and Rule 152. In this bench opinion, the Court held that petitioners' horse breeding and racing activity was an activity engaged in for profit and that petitioners were not entitled to the casualty loss because Mr. Mitch had been given away before the destruction of that horse occurred. The Court also determined the fair market value and hence the basis for each horse. The basis for each of the five horses acquired in 1981 was as follows: Sea Rulla
$ 12,000
Rusty Knight
12,300
Bar's Open
5,000
Miss Crescent
400
Mister Mitch
100
Total
$ 29,800
Briefly stated, the facts showed that in 1981 petitioners had loaned or advanced some $74,994 to one Mr. DiPiero, a neighbor, and that when Mr. DiPiero could not repay the money, petitioners took possession of the horses because he had no other assets and petitioners' then attorney *561 advised them it was better to take the horses than to get nothing from Mr. DiPiero. Although this was a close case on its facts, the Court concluded that petitioners had an actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1983), affd-without opinion 702 F.2d 1205 (D.C. Cir. 1983). That ultimate finding of fact was largely based upon the fact that petitioners were more or less pushed into the horse breeding and racing activity by accident and tried to make a financial success of the horses rather than "writing off" the bad debt in 1981. RULE 155 COMPUTATIONS In the parties' initial Rule 155 computations, the parties agreed upon the proper figures for the items in the deficiency notice. Petitioners' computations, however, included adjustments to Schedule D capital losses, although the deficiency notice had not made any adjustments to the Schedule D items as reported on petitioners' 1982 tax return. The capital loss adjustments proposed by petitioners related to a certain capital loss carryover from 1981 that was not reported on their 1982 return and to what they now regard as the "balance" of the DiPiero debt *562 as part of or affecting the amount of any capital loss carryover. Petitioners argued at trial that the bases for the five horses should be the entire amount of the DiPiero indebtedness forgiven or discharged in exchange for these horses. Petitioners cited in support thereof Shaheen v. Commissioner, T.C. Memo. 1982-445. The Court rejected that approach, essentially for the same reasons it was rejected in the Shaheen case. [2] Instead the Court, based on all of the evidence in the record, determined the fair market value of each horse at the time it was acquired in 1981 and hence its basis. Petitioners do not challenge those basis determinations, and in any event a Rule 155 proceeding is not an opportunity to reargue the Court's findings of fact and opinion. *563 Petitioners now challenge the treatment of the $45,194 "balance" of the DiPiero indebtedness (the $74,994 debt - $29,800 basis determined by the Court = $45,194). Petitioners rely on the following language in our Shaheen opinion, characterizing any such excess as a bad debt under section 166: If a creditor receives property in exchange for discharging a debt then the debt is considered paid to the extent of the fair market value of the property acquired. IF THE AMOUNT OF THE DEBT EXCEEDS THE FAIR MARKET VALUE OF THE PROPERTY RECEIVED THEN THE EXCESS IS DEDUCTIBLE AS A SECTION 166 BAD DEBT DEDUCTION. The creditor's basis in the acquired property is its fair market value at the time it is received. Commissioner v. Spreckels, 120 F.2d 517 (9th Cir. 1941), affg. a Memorandum Opinion of the Board of Tax Appeals; Kohn v. Commissioner, 16 T.C. 960 (1951), affd. 197 F.2d 480 (2d Cir. 1952). [3] [44 T.C.M. at 697-698; 51 P-H Memo T.C. par. 82,445 at 82-1972. Emphasis added.] * * * *564 It is too late to raise such a bad debt issue in Rule 155 proceedings. Rule 155(c) expressly provides that: (c) LIMIT ON ARGUMENT: Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration. See Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 3U8 (1932); Molasky v. Commissioner, 91 T.C. (Sept. 26, 1988); Harwood v. Commissioner, 83 T.C. 692 (1984); Cloes v. Commissioner, 79 T.C. 933 (1982); Estate of Papson v. Commissioner, 74 T.C. 1338, 1340 (1980) and cases cited therein. [3]
Here the 1981 loans to *565 the neighbor were not made in connection with Mr. Litzenberg's business as an engineer, and any bad debt deduction would be deductible only as a nonbusiness bad debt (i.e., as short-term capital loss) and only after the debt became totally worthless. Sections 166(d) and 1211(b). There may perhaps be some question as to whether the debt became totally worthless in 1981 since petitioners got the horses that year. Assuming the debt became totally worthless in 1981, the year 1981 is not before the Court. While a short-term capital loss deduction can be carried over to later years (sec. 1212(b)), no claim in connection with such a nonbusiness bad debt or a carryover therefor was ever raised up to the time of the Rule 155 proceedings. Indeed petitioners tried the case on an entirely different theory. Petitioners argued at trial that instead of "writing off" the bad debt in 1981 and as "an economic alternative" to writing off the bad debt, they got into the horse breeding and racing business. For that reason, the Court determined they had an actual and honest profit objective. Their argument at trial was that the horses had a value equal to or greater than the DiPiero debt, not that they *566 accepted the horses in partial payment of the debt. The Court simply disagreed as to the value of the horses. Petitioners could have but did not make any alternative argument in regard to a bad debt deduction for 1981 and a carryover to 1982. We further think this is not a case where it can be said that an issue was in fact, if not in form, raised by the deficiency notice. See and compare Polizzi v. Commissioner, 247 F.2d 875 (6th Cir. 1957), affg. in part and remanding in part Nemmo v. Commissioner, 24 T.C. 583 (1955); Cloes v. Commissioner, supra, 79 T.C. at 936-937. At best a possible bad debt deduction for an earlier year lurked in the background and has been brought to the foreground only by the Court's findings of fact and opinion on the issues actually litigated. However, any such "facts" in regard to a purported bad debt deduction in 1981 "were not the result of a litigated issue but are, as to this item, only incidental to the facts necessary to determine the issues properly litigated." Baird v. Commissioner, 43 B.T.A. 415, 416 (1941). Perhaps petitioners could have raised an alternative bad debt argument, but *567 they did not do so. Instead they said they had gone into the horse breeding and racing activity as an "economic alternative" to any such claim. We will not permit petitioners to raise such a claim in Rule 155 proceedings, after the trial and when it is too late for development of the proper factual record that such a claim would require. Petitioners' initial Rule 155 computations also sought to raise another new issue, a matter of a capital loss carryover from 1981 that petitioners say they neglected to "pick up" on their 1982 return. No adjustments to income reported on petitioners' Schedule D were made by the statutory notice of deficiency issued in this case. No issue as to Schedule D gains or losses was ever raised or litigated at the trial, and the computation under Rule 155 is simply too late to raise an issue as to a claimed capital loss carryover from 1981. This is not a situation where an issue was in fact, if not in form, raised by the deficiency notice. See and compare Polizzi v. Commissioner, supra.This is not a mere correction of a mathematical error. See and compare Delatour Beverage Corp. v. Commissioner, 12 B.T.A. 412, 417 (1928). *568 While petitioners' 1981 tax return is in evidence, [4]a tax return is merely a statement of a taxpayer's claim and does not establish the correctness of the figures and facts stated therein Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T C 834, 837 (1974); Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957). This is not a situation of merely picking up a figure, as petitioners characterize it. This would be a wholly new issue that would require an opportunity for respondent to audit the 1981 return and determine whether or not there was a capital loss to be carried over to 1982. While such an issue possibly could have been raised for the first time in the pleadings or at least before trial, it cannot be raised in the Rule 155 proceedings. Molasky v. Commissioner, supra; Cloes v. Commissioner, supra; Estate of Papson v. Commissioner, supra.
*569 In their revised Rule 155 computations and arguments in support thereof, [5] petitioners refer to the capital gains item as "the validly deductible loss carryforward negligently omitted from Petitioners' 1982 return by Petitioners' paid tax preparer" and state that it was not discovered until their present counsel began "post-trial calculations" (Rule 155 computations). Petitioners argue that the Court should consider it because petitioners' "substantial capital transactions have not previously been questioned by the Internal Revenue Service" and that they are not "aware of any present or past indications of incorrect stock or security transaction reporting or Internal Revenue Service inquiry into these transactions." That is wholly irrelevant. Each tax year stands on its own and whether or not that item was challenged in prior years is beside the point. The item could not be challenged in the audit of the 1982 return or in the trial before this Court because petitioners omitted the item from their return and never raised the issue until the first round of the Rule 155 computations. That is simply too late, despite petitioners' protestations that they "are prepared to support the *570 loss carryforward originating in 1981." Lastly, in support of their claim for the capital loss carryover, petitioners argue that in the intervening period between the parties' first and second round of computations, petitioners have agreed to adjustments not before the Court, proposed by Respondent (the $4,930 casualty loss adjustment in 1983) and in the spirit of substantial justice feel entitled to similar consideration on the 1982 [sic] capital loss carryforward. This is litigation, not mediation or negotiation. Respondent is not entitled to the $4,930 casualty loss adjustment. In the Court's bench opinion, the Court, in discussing the horses Gar Ware and Clipper Count, pointed out that those horses were given away but petitioners nonetheless claimed *571 a casualty loss on their 1983 tax return for each horse in the amount of $2,550 each. The Court also pointed out that respondent had not disallowed that casualty loss deduction, no issue had been raised in the case about that deduction, and "the Court will not further consider the matter." The Rule 155 proceedings are confined strictly to "the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court." Rule 155(c). Rule 155 is not an "open sesame" for either party to get adjustments for issues not raised in the deficiency notice, in the pleadings, in the pre-trial memoranda, or at trial. Since that casualty loss adjustment goes beyond the issues properly raised and litigated in this case, the Court will disregard the parties' "post-trial agreements." For the foregoing reasons, the decision in this case will be entered based upon respondent's initial Rule 155 computations. Petitioners took no exception to those computations except for the two new issues -- the bad debt and capital loss carryover issues that petitioners *572 sought to raise for the first time in their initial Rule 155 computations. Accordingly, decision will be entered against petitioners for deficiencies in the amounts of $23,927, $1,307, and $6,486 for the taxable years 1982, 1983, and 1984, respectively. Decision will be entered as indicated above. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
2. In Shaheen v. Commissioner, T.C. Memo. 1982-445, we considered and rejected the same argument as follows: Petitioners cite Gould Securities Co. v. United States, 96 F.2d 780 (2d Cir. 1938), Society Brand Clothes, Inc. v. Commissioner, 18 T.C. 304 (1952), and Sargent v. Commissioner, T.C. Memo. 1970-214, as support for their contention that the basis in property received in exchange for the discharge of indebtedness is the amount of debt discharged. Petitioners can find no solace in these cases, however, because they squarely hold that the basis equals the entire discharge amount only if (1) the fair market value of the acquired property meets or exceeds the discharge amount; or (2) the acquired property has no ascertainable value. * * * [44 T.C.M. 694 at 698; 51 P-H Memo T.C. par. 82,445 at 82-1971. Fn. ref. omitted.] Similarly here, the market value of the horses did not meet or exceed the discharge amount and petitioners did not establish that the horses had no ascertainable value. Accordingly, the cases cited in the above quoted material are likewise inapplicable to the facts of the present case. Petitioners do not suggest otherwise. In any event a Rule 155↩ proceeding is not an occasion to reargue the merits of the Court's findings of fact and opinion. 3. See also Sargent v. Commissioner, T.C. Memo. 1970-214. However, any bad debt was deductible, if at all, in 1981 when petitioners took the horses from DiPiero. The year 1981 is not before the Court. Also this bad debt claim would constitute a new issue not raised in the statutory notice of deficiency, in the pleadings, in the parties' pre-trial memoranda, or at trial.↩
3. See also Lewis v. Commissioner, T.C. Memo. 1986-211; Pereira v. Commissioner, T.C. Memo. 1976-66↩. 4. On petitioners' 1981 tax return, their Schedule D showed net short-term capital gains of $19,529, a net long-term capital loss of ($87,133), which after certain computations resulted in a deduction of a loss of $3,000 for the year and a long-term capital loss carryover from 1981 to 1982 of ($61,604). However on petitioners' 1982 tax return, that long-term capital loss carryover was not reported, and petitioners' Schedule D for 1982 reported capital gains income of $26,218. Petitioners' 1981 return was not audited, but their 1982 return was. ↩
5. On September 1, 1988 petitioners submitted another computation and a document entitled "Response to Respondent's Report to the Court and Motion to Revise Decision." Any such motion is improperly joined (Rule 54) and also premature since no decision has yet been entered by the Court (Rule 162). The Court has filed petitioners' revised computations under Rule 155↩ and has filed the other document as their Report to the Court.